Andrea Sue SWEENEY, Appellant,

v.

KING'S DAUGHTERS MEDICAL CENTER, Hon. Grant S. Roark, Administrative Law Judge and Workers' Compensation Board, Appellees.

No. 2007–SC–000885–WC.

Supreme Court of Kentucky.

Aug. 21, 2008.

George C. Perry, III, Paintsville, KY, Counsel for Appellant.

A. Stuart Bennett, Jackson Kelly, PLLC, Lexington, KY, Counsel for Appellee.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) dismissed the claimant's application for benefits, finding that she failed to show a permanent, work-related injury. The Workers' Compensation Board and the Court of Appeals affirmed. Appealing, the claimant argues that Kentucky should adopt a rule that gives the opinions of a treating physician greater weight than those of an examining physician. She also argues that the ALJ misconstrued the law regarding pre-existing injuries and failed to support the decision with substantial evidence.

We affirm. Neither Chapter 342 nor the applicable regulations affords greater weight to a treating physician's testimony. Substantial evidence supported the decision under a correct interpretation of the law.

The claimant was born in 1950 and graduated from college with a degree in nursing. She began working for the defendant as a Certified Operating Room Nurse in 1995 and began to experience neck and arm pain in 1999. In 2002 she underwent a right ulnar nerve release and also underwent a spinal fusion at C5–6. She did not allege that the symptoms or surgeries resulted from her work. She stated that she returned to full-duty work without restrictions and that even her migraines ceased after the surgery. Although she reported neck pain when pushing a stretcher in August 2003 and had x-rays, she missed no work.

On September 23, 2004, the claimant felt something pull in her neck and shoulder while helping to move a patient onto an operating table. Later that day, her left arm went limp. A physician placed her on light duty for about a week but took her off work altogether on September 30, 2004. Her application for benefits alleged a September 23, 2004, cervical spine injury as well as a September 30, 2004, cumulative trauma injury to the wrists (carpal tunnel syndrome), elbows (ulnar nerve), and back. The parties stipulated that the employer paid temporary total disability benefits voluntarily from October 1, 2004, until August 28, 2005, and that it paid about $9,500.00 in medical expenses.

When the matter was heard, the claimant's Social Security Disability claim was pending. She stated that she suffered from carpal tunnel syndrome and a separate ulnar nerve problem, that she dropped things more frequently than before September 2004, and that she suffered from neck spasms, tingling and numbness in her left arm, and migraine headaches. She argued that the 2004 injuries caused her to be totally disabled and that she had no prior, active disability. The employer argued that any injury resolved and caused no permanent harm.

A cervical spine MRI performed in October 2004 revealed the C5–6 fusion, a C4–5 posterior disc protrusion that had in-

creased somewhat since 2002, and a possible C6–7 posterior disc protrusion. The radiologist noted that hardware from the fusion significantly distorted the field at C5–6 but that there was probably greater disc disease in the levels just above and below C5–6. Dr. Bajorek reported that nerve conduction studies performed in December 2004 revealed no evidence of active cervical radiculopathy. The report noted that the left tardy ulnar palsy was unchanged since 2002 and that there was mild carpal tunnel syndrome on the right without denervation.

Dr. Powell, a neurosurgeon, treated the claimant's neck pain and performed the 2002 fusion surgery. In November 2004 he noted that she had few symptoms after the work-related injury except occasional neck pain. He also noted that a preliminary review of the films showed nothing outstanding. In May 2006 Dr. Powell noted complaints of dropping things (primarily with the left hand), of ongoing pain and spasm, and of developing migraines after traveling any distance in a car. He reported that a reexamination revealed weakness in the left hand but noted that there was no reflex abnormality and a nondermatomal pattern for sensory loss. He also noted that the most recent MRI was unchanged from 2004 and revealed no definite evidence of nerve compression. Dr. Powell diagnosed cephalgia[1] secondary to the work injury. He did not recommend surgery but stated that the claimant was unable to return to nursing duty that required lifting or prolonged chart work and attributed her present condition to her work. He recommended that she retire.

Dr. Boyer, a neurosurgeon, reviewed the 2004 cervical spine MRI. He reported min-imal bulging at C5–6. He also reported that the nerve conduction studies revealed no radiculopathy.

Dr. Bell, who is Board Certified in physical medicine and rehabilitation, provided pain management therapy. He reported in July 2006 that the claimant's diagnoses included the C5–6 fusion, cervical spondylosis, cervical radiculitis, mild ulnar palsy, and excellent but brief relief from symptoms with treatment. In his opinion, she was permanently and totally disabled from nursing or any other occupation for which she was qualified. He declined to address causation or pre-existing changes, stating that they required neurosurgical expertise.

Dr. Herr evaluated the claimant for her attorney in April 2006. He attributed a herniated cervical disc at C4–5 to the injury, assigned a 28% permanent impairment rating based on the cervical spine, and stated that no portion of the impairment was active before the work-related incident. When deposed, he acknowledged that an artifact from the fusion hardware obscured the disc space on MRI so that he could not state definitively that the C4–5 disc was herniated. He stated that such a herniation would be consistent with the "known statistical behavior" of cases in which there is "a symptomatic apparent surgical failure ... after a surgical spine fusion." He reported some physical findings that were consistent with radiculopathy but acknowledged that the most recent nerve conduction study showed no evidence of a cervical spine or upper extremity radiculopathy. He also acknowledged that the 2002 fusion warranted a permanent impairment rating under DRE Cervical Category IV.[2] He explained that he characterized no portion of the 28% rating

---

1. *Taber's Cyclopedic Medical Dictionary* 362 (19th ed.2001), defines cephalgia as being a headache.

2. The Fifth Edition of the AMA *Guides to the Evaluation of Permanent Impairment,* page 392, indicates that DRE Cervical Category IV

as being prior, active impairment because the claimant was released to work without restrictions after the fusion.

Dr. Rice, a board-certified family physician, evaluated the claimant for her attorney in May 2006. He diagnosed a herniated cervical disc at C4–5 based on MRI. Dr. Rice attributed the condition to the injury at work and noted that repetitive trauma to the claimant's hands and shoulders over 27 years produced carpal tunnel syndrome and arthritis. He assigned a 15% permanent impairment rating to the C4–5 herniation under Tables 15–6 and 15–15, stating that there was no active impairment before the work-related incident.[3] When deposed by the employer, he stated that he found evidence of radiculopathy on physical examination and attributed the negative findings on the nerve conduction study to her body position during the study. He acknowledged that the 2002 fusion resulted in an "alteration of motion segment integrity" and warranted a 25–28% permanent impairment rating under DRE Cervical Category IV.

Dr. Sheridan, an orthopedic surgeon, evaluated the claimant for the employer in August 2005. He noted that she had had undergone a right ulnar nerve release due to bilateral upper extremity pains and paresthesias in 2002, before the C5–6 fusion. He noted that the 2004 MRI revealed the fusion as well as some bulging at C4–5. In his opinion, the incident at work caused only an acute cervical strain that resolved and warranted no permanent impairment rating. He thought that she could return to her former work without restrictions.

Dr. Best, an orthopedic surgeon, evaluated the claimant for the employer in May 2006. He noted that physical examination revealed a submaximal and inconsistent effort on her part, no loss of reflex or atrophy, and no objective evidence of a specific abnormality. He reported that she was at maximum medical improvement, that a 25–28% permanent impairment rating resulted from the 2002 surgery, and that the injury on September 23, 2004, caused no specific abnormality or change of condition. In his opinion, the claimant could return to work as a nurse. He noted in a supplemental report that the fusion hardware obscured less of the cervical spine on the 2006 MRI than it had on the previous MRI due to an improvement in technology. The 2006 MRI showed no disc herniation, foramenal stenosis, or nerve root impingement at any level. He also noted that neither the two neurosurgeons who testified nor the two orthopedic surgeons found any documented cervical radiculopathy on physical exam.

After reviewing all of the medical evidence, the ALJ focused on the testimony by the four independent evaluators, Drs. Herr, Rice, Sheridan, and Best. The ALJ found the opinions of Drs. Sheridan and Best to be most persuasive, noting that Drs. Herr and Rice assigned no pre-existing, active impairment despite the fusion surgery and also that no objective findings showed the existence of a new, permanent injury to warrant permanent benefits. Thus, the ALJ dismissed the claim.

KRS 342.0011(1) defines a compensable injury as being a work-related traumatic event that is the proximate cause producing a harmful change in the human organism as evidenced by objective medical findings. The claimant alleged the September 23, 2004, cervical spine injury as well as a cumulative trauma injury to he wrists (car-

warrants a 25–28% permanent impairment rating.

3. Table 15–6a addresses corticospinal tract impairments to the upper extremities due to spinal cord injury. Table 15–15 is a spine evaluation summary. Dr. Rice did not explain how he arrived at a 15% rating under the two tables.

pal tunnel syndrome), elbows (ulnar nerve), and back. Thus, she had the burden to prove every element of her claim.[4]

■ The claimant urges to court to give greater deference to the treating physicians' testimony based on *Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1069 (6th Cir.1992), and other authority regarding Social Security Disability claims. *Walker* explains that federal social security regulations entitle a treating physician's opinion to substantial deference and entitle it to complete deference if it is uncontradicted. Thus, the claimant's argument is misplaced in the context of a Kentucky workers' compensation claim, which is governed by Chapter 342 and the applicable regulations.

As noted in *Miller v. East Kentucky Beverage/Pepsico, Inc.,* 951 S.W.2d 329, 331 (Ky.1997), KRS 342.185 gives the ALJ the sole authority to judge the weight, credibility, and inferences to be drawn from the evidence of record. The court determined earlier in *Wells v. Morris,* 698 S.W.2d 321, 322 (Ky.App.1985), that nothing requires an ALJ to give greater weight to a treating physician's testimony. Although the legislature later amended KRS 342.315(2) specifically to require an ALJ to afford a university evaluator's clinical findings and opinions presumptive weight, Chapter 342 and the regulations continue to be silent regarding the weight to be afforded a treating physician's testimony. We *construe* that silence as a legislative intent to give it no particular weight.

■ The ALJ dismissed the claim based on the testimonies of Drs. Sheridan and Best. Dr. Sheridan found only a temporary injury that resolved. Dr. Best reported that the 2006 MRI showed no disc hernia-

tion, foramenal stenosis, or nerve root impingement at any level, which together with the nerve conduction studies negated the basis for the permanent impairment rating that Dr. Rice assigned. Although Dr. Herr attributed a 28% rating under DRE Cervical Category IV entirely to the September 2004 injury, uncontradicted evidence indicated that the previous, non-work-related cervical fusion, by itself, would warrant a 25–28% rating. Thus, the decision was reasonable under the evidence. *Special Fund v. Francis,* 708 S.W.2d 641, 643, explains that a reasonable decision may not be reversed on appeal.

Finally, the ALJ did not misapply the law regarding pre-existing conditions. *McNutt Construction/First General Services v. Scott,* 40 S.W.3d 854, 859 (Ky. 2001), stands for the principle that "[w]here work-related trauma causes a dormant degenerative condition to become disabling and to result in a functional impairment, the trauma is the proximate cause of the harmful change; hence, the harmful change comes within the definition of an injury."[5] It is inapplicable in the present situation because the ALJ relied on medical evidence that work-related trauma caused no permanent harm and because no overwhelming medical evidence compelled otherwise.

The decision of the Court of Appeals is affirmed.

MINTON, C.J., and ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER, and SCOTT, JJ., concur. VENTERS, J., not sitting.

---

4. *Roark v. Alva Coal Corporation,* 371 S.W.2d 856 (Ky.1963); *Wolf Creek Collieries v. Crum,* 673 S.W.2d 735 (Ky.App.1984); and *Snawder v. Stice,* 576 S.W.2d 276 (Ky.App.1979).

5. *See also Ingersoll–Rand v. Edwards,* 28 S.W.3d 867 (Ky.App.2000).