# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

2018-SC-000463-WC

JAMES COMBS        APPELLANT

 

ON APPEAL FROM COURT OF APPEALS
V.        CASE NO. 2017-CA-000240-WC
WORKERS' COMPENSATION BOARD NO. 13-WC-59455

CORRECTIONS CORPORATION OF        APPELLEES
AMERICA D/B/A LEE ADJUSTMENT
CENTER; HON. WILLIAM RUDLOFF,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING AND REMANDING**

James Combs sought workers' compensation benefits for lower back and neck injuries he attributed to a work-related incident. The Administrative Law Judge (ALJ), having heard the evidence and legal arguments, concluded that Combs was entitled to permanent partial disability benefits. The Workers' Compensation Board (Board) vacated and remanded, directing the ALJ to make additional findings as to causation and whether Combs had a pre-existing condition. The Court of Appeals affirmed the Board's decision and an appeal to this Court followed. Having concluded that the ALJ failed to provide sufficient explanation for his findings, we affirm the Court of Appeals and remand to the ALJ for further findings consistent with this Opinion.

## FACTS AND PROCEDURAL HISTORY

In 2013, James Combs worked as a corrections officer and criminal investigator for Corrections Corporation of America (CCA). His typical duties included controlling inmates, investigating disciplinary matters, and providing technical support. He primarily worked at a desk, but occasionally carried printers weighing approximately 75 pounds. In November 2012, Combs injured his lumbar spine when he lifted a deer after hunting. As a result of this injury, Dr. Robert Owens, a neurosurgeon, performed a L4-L5 laminectomy and discectomy in April 2013.[1] Dr. Owens reported that the surgery was successful despite Combs's report that he experienced occasional back pain. In May 2013 Combs suffered two additional back injuries — one from having to rescue his dogs from a flood and the other from helping his son lift a generator. Combs returned to full, unrestricted duties at work on June 18, 2013, but still experienced some back pain and stiffness.

On June 28, 2013, Combs was injured at work when he lifted a box, raising up and striking his lower back on a shelf, resulting in a six-centimeter-long cut on the left side of his back. Combs visited the onsite nurse, who

---

[1] "Laminectomy is a surgery that creates space by removing the lamina — the back part of a vertebra that covers the spinal canal. Also known as decompression surgery, laminectomy enlarges the spinal canal to relieve pressure on the spinal cord or nerves." *Laminectomy*, MAYO CLINIC (June 13, 2018) https://www.mayoclinic.org/tests-procedures/laminectomy/about/pac-20394533. A discectomy is a "surgical procedure to remove the damaged portion of a herniated disk in your spine. *Diskectomy*, MAYO CLINIC (June 22, 2018) https://www.mayoclinic.org/tests-procedures/diskectomy/about/pac-20393837. A herniated disk can irritate or compress nearby nerves. *Id.*

Although the source cited spells discectomy with a "k," throughout the record it is predominantly spelled with a "c" and therefore we use that spelling in this Opinion.

cleaned the cut, and he returned to work. Three and a half months later, Combs sought medical treatment from Dr. Salem Hanna and an immediate care center. Combs complained of lower back and left leg pain but did not report any neck pain. Dr. Hanna diagnosed him with lower back pain, recommended over-the-counter pain medication, and referred him back to Dr. Owens.

On October 29, 2013, Combs visited Dr. Owens complaining of lower back pain and left leg pain. He also, for the first time, complained of left arm pain. MRIs were performed a month later, and the cervical (neck) MRI revealed disc protrusion at C5-C6 resulting in stenosis and left side protrusions at C3-C4, C4-C5, and C6-C7. The lumbar (lower back) MRI revealed the surgery Dr. Owens previously performed with no recurrent disc protrusion. At the October 29, 2013 visit to Dr. Owens, Combs reported back, arm and leg pain but specifically denied any neck pain.

Combs initiated a workers' compensation claim in March 2014, claiming injury to his back, left shoulder, and left arm. CCA stipulated that Combs sustained a work-related injury in June 2013 but argued that the injury did not result in an impairment rating meriting an award of income benefits. CCA also challenged whether the work incident caused injury to his cervical spine, left shoulder and left arm.

Both parties submitted Independent Medical Exams (IMEs). On April 26, 2014, Dr. Jeffrey Uzzle conducted an IME and opined that Combs suffered a permanent whole person impairment of 9%, attributing 6% to the

radiculopathy complaints in the cervical spine and 3% to the lumbar radiculopathy. In addition, Dr. Uzzle stated that Combs suffered a 10% lumbar impairment due to a pre-existing condition. In his medical report, Dr. Uzzle stated that the work injury was the cause of Combs's complaints, but, notably, left the "explanation of causal relationship" section — where the examiner is directed to explain how the work-related injury caused the harmful change in the human organism — blank. Noting the complexity of the case, Dr. Uzzle stated that he found Combs to be credible given his history, examination and the straightforwardness of his presentation. He determined that Combs did not retain the physical capacity to return to the type of work performed at the time of his injury.

Dr. Michael Best examined Combs on April 29, 2014, and stated that Combs sustained an abrasion/contusion to the lumbar spine as a result of the June 28 work injury. However, Dr. Best concluded that the work injury did not produce a permanent harmful change in the human organism, and that Combs was fully capable of returning to his work duties. He also found no causal relationship between the injury and Combs's neck complaints, which were first documented approximately three and a half months after the injury. While Combs did have an active impairment, the impairment was attributable to the deer hunting injury and surgery, not the work injury. Dr. Best opined that Combs retained the physical capacity to return to the type of work he performed at the time of the injury with no restrictions.

4

CCA filed supplemental correspondence from Dr. Best, which he prepared after reviewing Dr. Uzzle's report. Dr. Best again noted that Combs complained of and sought treatment for his cervical spine three and a half months after the work injury, and that no cause and effect relationship was established between the incident and the injury. Dr. Best also disagreed with Dr. Uzzle's finding of radiculopathy, noting that according to American Medical Association (AMA) guidelines, certain criteria, such as loss of reflex, strength deficit, and atrophy, must be met and were not present in Combs's case.

The ALJ conducted a hearing on July 25, 2014. On review of Combs's claim for workers' compensation benefits, the ALJ concluded that Combs was entitled to permanent partial disability benefits from the date of the accident and continuing for 425 weeks. The ALJ determined that Combs was a credible witness and relied on the IME performed by Dr. Uzzle in determining that Combs could not return to the type of work he performed at the time of the work injury. The ALJ relied on Dr. Uzzle's finding that Combs suffered a 9% whole person permanent partial impairment as a result of the work injury.

CCA petitioned for reconsideration, requesting additional findings supporting the ALJ's conclusion that the workplace injury caused Combs's neck condition. CCA further argued that the ALJ erred in finding Combs had no pre-existing active condition or impairment of his lower back in light of his recent lumbar surgery. Additionally, CCA requested additional findings regarding Combs's entitlement to an enhanced benefits award.

5

On reconsideration, the ALJ stated that CCA was simply trying to reargue the case, but out of caution he elected to discuss the case again. The ALJ reiterated much of what he included in his first opinion and order, and denied CCA's petition for reconsideration. CCA then appealed to the Board on October 20, 2014.

On February 27, 2015, the Board issued an opinion vacating and remanding, and directing the ALJ to provide specific evidentiary findings to support his determination regarding causation of the cervical condition, the determination of no pre-existing active impairment or condition, and the application of the three-multiplier. The Board noted that the evidence in this case may very well support an award of permanent partial disability benefits, but that the ALJ failed to provide a sufficient analysis supporting his award. Additionally, the Board recognized that the ALJ, as fact-finder, is granted sole discretion in determining the character, quality and substance of evidence, but that the ALJ must also provide findings sufficient to inform the parties of the basis for his decision to allow for meaningful review. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418 (Ky. 1985); *Big Sandy Cmty. Action Program v. Chaffins,* 502 S.W.2d 526 (Ky. App. 1973).

On June 26, 2015, the ALJ issued an amended opinion and order awarding the same benefits as in the initial decision. The ALJ again found Combs's testimony and Dr. Uzzle's medical opinion persuasive and relied on Dr. Uzzle's determination that Combs's diagnoses were due to the work injury. The ALJ also found that the cervical injury was associated with a herniated

6

disc at the C5-C6 level and noted the complexity of the case. CCA filed another petition for reconsideration, which the ALJ again denied on August 4, 2015. CCA appealed to the Board a second time, challenging the ALJ's findings regarding the work-related cervical injury, the lack of a pre-existing lower back impairment and the application of the three-multiplier.[2] The Board again vacated the ALJ's decision and remanded for additional findings on these issues.

Combs appealed the Board's decision to the Court of Appeals, arguing that the Board erred as a matter of law and substituted its opinion for that of the ALJ. In a 2-1 decision, the Court of Appeals affirmed the Board's opinion and found that the Board did not substitute its opinion for the ALJ's, but rather directed the ALJ to explain the evidentiary basis for his findings. In her dissent, Judge Jones opined that no additional findings were necessary and the Board should not reweigh the evidence. This appeal followed.

## **ANALYSIS**

Combs argues that the Court of Appeals erred as a matter of law in affirming the decisions of the Board. Specifically, he argues that the Board erred in vacating the ALJ's decision and remanding for additional findings regarding causation and whether he suffered from a pre-existing condition at the time of the injury. He claims that the ALJ's findings are adequate to support his decision and that by requiring additional factual findings, the

---

[2] The application of the three-multiplier is not at issue in this present appeal.

Board is substituting its opinion for that of the ALJ. Parties to a workers' compensation case are "entitled to a sufficient explanation by the ALJ of the basis for the decision." *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999). In reviewing the appellate court's affirmance of the Board's remand to the ALJ for findings regarding the cervical injury and the pre-existing back injury, we agree that the ALJ did not provide a sufficient explanation for his findings on these two issues.

In concluding that Combs's cervical condition is work related, the ALJ relied solely on Dr. Uzzle. As the Board carefully explained:

> The ALJ relied solely upon Dr. Uzzle's opinion to conclude Combs' cervical condition is work-related, which is the only medical opinion in the record attributing the condition to the work incident. Combs reported to Dr. Uzzle that his cervical complaints arose a few days after the work incident. Dr. Uzzle also reviewed a November 27, 2013 cervical MRI which revealed a herniated disc at C5-6. Based on the MRI and Combs' description of the onset of his symptoms, Dr. Uzzle concluded Combs' neck complaints are associated with the herniated disc at C5-6 level.

> In completing his evaluation form, Dr. Uzzle left blank a portion which requested him to "explain how the work-related injury caused the harmful change in the human organism." In a narrative portion of the report, Dr. Uzzle acknowledges the complexity of Combs' case but reasons "his history, exam and straightforwardness of his presentation lead to increased credibility of these diagnosis (sic) and his complaints." Dr. Uzzle then concludes Combs' cervical condition is related to a herniated disc at C5-6 which was caused by the work incident, but provided no further explanation for this conclusion.

> In short, Dr. Uzzle's opinion as to causation is based solely on the history Combs provided to him, including the assertion his cervical complaints began a few days after the work incident. Combs similarly testified. However, we also note Combs never described any trauma to his neck or shoulder in the incident report, and he acknowledged that he had experienced neck spasms since the deer lifting incident. Furthermore, it is not clear whether

8

Dr. Uzzle reviewed the medical records from early October 2013, which contain no reference to an injury or treatment for any condition other than the low back. Most importantly, Dr. Uzzle provides no explanation of how the work injury to his lumbar spine caused a herniated cervical disc. When the cause of a condition is not readily apparent to a lay person, medical testimony supporting causation is required. Medical causation must be proven by medical opinion within "reasonable medical probability." The mere possibility of work-related causation is insufficient.

. . . [T]he circumstances of Combs' neck injury are unusual, given that he struck only his low back during the work accident, simultaneously worked as a letter carrier, and had experienced neck spasms since his hunting accident. Due to these circumstances, it is insufficient for the ALJ to merely state he found Dr. Uzzle's opinion persuasive. CCA is entitled to an opinion which weighs the testimony and proof, and offers a sufficient basis for the finding of a work-related neck injury.

Jan. 20, 2017 Bd. Op. at 10-13 (internal citations omitted). We discuss the cervical injury and pre-existing back injury in turn.

## I. The Court of Appeals did not err in affirming the Board's remand to the ALJ for findings on causation and the cervical injury.

Kentucky Revised Statute (KRS) 342.0011(1) defines a compensable injury as "any work-related traumatic event . . . which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings." As a workers' compensation claimant, Combs has the burden of proving all elements of his claim. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984). The ALJ is charged with fact-finding and has the sole authority to determine the quality, character and substance of the evidence. *Square D Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993). On review of the ALJ's decision, the issue is whether there is substantial evidence supporting his findings, defined as "some evidence of substance and

9

relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Rowland*, 998 S.W.2d at 481-82.

Combs argues that the ALJ's finding of a work-related cervical injury was supported by his own testimony, and the report of Dr. Uzzle, which provided substantial evidence that he retains a permanent impairment as a result of the cervical injury. But after reviewing Combs's deposition and his hearing testimony, we find nothing to suggest he stated he injured his neck during the June 28 injury, other than testimony of a later onset of neck pain. Further, despite the objective medical evidence of Combs's injury at C5-C6, the ALJ failed to establish the causal relationship between the cervical injury and the work incident. As the Court of Appeals stated, "[i]t is this disconnect coupled with the unique factual posture of this case that gave the Board pause."

Here, the Board determined that it was insufficient for the ALJ to merely state he found Dr. Uzzle's opinion persuasive, noting that CCA is entitled to an opinion which weighs the testimony and proof, and offers a sufficient basis for the determination of a work-related injury. In affirming the Board, the Court of Appeals noted that Combs did not testify that he struck his neck during the accident (even though he later reported cervical radiculopathy beginning a few days after the event). In fact, Combs affirmatively testified that he did *not* strike his neck. The Court of Appeals further observed that Dr. Uzzle failed to explain how Combs "scraping his low back on a shelf *caused* a herniated disc." (Emphasis in original). Reliable expert proof is required on issues such as

10

medical causation when it is not apparent to a layperson. *Kingery v. Sumitomo Elec. Wiring*, 481 S.W.3d 492, 499 (Ky. 2015).

Here, the Board was not reweighing the evidence or substituting its opinion for that of the ALJ, but merely highlighting the ALJ's failure to provide "sufficient explanation" for his finding of permanent partial disability as a result of the June 28, 2013 incident. Therefore, a remand for further findings and explanation is appropriate.

## II. The Court of Appeals did not err in affirming the Board's remand to the ALJ for findings on the pre-existing back injury.

Combs also argues that the Board substituted its opinion for that of the ALJ when it required the ALJ to explain adequately the evidentiary basis for his finding that Combs did not have a pre-existing condition. A pre-existing condition must be impairment ratable and symptomatic immediately prior to the work-related injury. *Finley v. DBM Tech.*, 217 S.W.3d 261 (Ky. App. 2007). In determining the ALJ's analysis was insufficient, the Board observed as follows:

> However, the ALJ seems to have solely relied on the release to return to work by Dr. Owen [following the April 2013 lumbar surgery] which does not equate to the lumbar condition being asymptomatic. The release standing alone is an insufficient basis to conclude Combs had no pre-existing active impairment. Combs testified that he was symptomatic and continued to treat for the low back condition which had resulted in surgery just ten weeks prior to the work incident.

> Further, the ALJ's determination of no pre-existing active impairment for the low back and reliance on the impairment rating of Dr. Uzzle is contradictory. Dr. Uzzle clearly indicated 10% of the 13% impairment rating he assigned for the low back was related to a pre-existing condition, and described the work accident as "an

11

aggravation" of the prior condition. He opined only 3% was attributable to the work injury. Dr. Best assigned a range of 10% to 13% impairment attributable to the deer carrying incident. Given the contradiction between the ALJ's findings and the medical opinions regarding pre-existing lumbar condition, it was incumbent upon the ALJ to more thoroughly explain his reasoning.

Bd. op. at 14-15. The Board took considerable care to explain that it was not seeking to usurp the ALJ's role as fact-finder, but instead was seeking clarification. The Board also noted that if, on remand, the ALJ determined there was a pre-existing active impairment, the evidence could still support the original finding that the incident produced a 3% increase in the low back impairment rating.

In affirming the Board's analysis, the Court of Appeals noted "[i]t is contradictory to find no pre-existing condition, but then rely on a medical opinion [Dr. Uzzle's] that based its impairment rating on the aggravation of a pre-existing condition." We agree. While it is within the ALJ's discretion to rely on parts of a witness's testimony and disregard other parts, the ALJ's findings regarding the pre-existing condition were inconsistent with his prior reliance on Dr. Uzzle's impairment rating. *Caudill v. Maloney's Disc. Stores*, 560 S.W.2d 15, 16 (Ky. 1977). Given the evidence presented, a remand for further findings and explanation is appropriate to provide the parties with a sufficient explanation for the ALJ's decision.

## CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals and remand to

12

the ALJ for further findings consistent with this Opinion.

All sitting. Minton, C.J.; Buckingham, Hughes, and VanMeter, JJ., concur. Lambert, J., dissents by separate opinion in which Keller and Wright, JJ., join.

LAMBERT, J., DISSENTING: Respectfully, I dissent. Our role in reviewing a decision of the Board "is to correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice."[3] Assessment of the credibility of the witnesses and the persuasive weight of the evidence is entirely within the ALJ's authority.[4] The ALJ, not the Board, is empowered "to determine the quality, character, and substance of the evidence."[5] The ALJ is also free to reject testimony, *Id.*, and "to believe part of the evidence and disbelieve other parts of the evidence[.]"[6] For these reasons, the Board should not be permitted to "substitute its judgment for that of the administrative law judge as to the weight of evidence on questions of fact."[7]

---

[3] *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

[4] KRS 342.285 (1)-(2): "An award or order of the administrative law judge as provided in KRS 342.275...shall be conclusive and binding as to all questions of fact[...]The board shall not substitute its judgment for that of the administrative law judge as to the weight of evidence on questions of fact."

[5] *Am. Greetings Corp. v. Bunch*, 331 S.W.3d 600, 602 (Ky. 2010) (footnote omitted).

[6] *Caudill v. Maloney's Disc. Stores*, 560 S.W.2d 15, 16 (Ky. 1977).

[7] *FEI Installation, Inc. v. Williams*, 214 S.W.3d 313, 316 (Ky. 2007).

regarding causation between Combs' workplace accident and cervical spine injury and whether he suffered from a pre-existing condition at the time of his workplace accident.

With regard to what the Board and the Court of Appeals perceived as a discrepancy between the circumstances surrounding Combs' workplace accident and the injury to his cervical spine, KRS 342.0011(1) defines a compensable injury as "a work-related traumatic event...which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings."[8] Medical causation by a medical professional does not need to be stated with absolute certainty, reasonable probability is sufficient.[9]

Combs' testimony concerning the circumstances of injury went as follows:

> I was boxing up some old IP phones that weren't working, preparing to ship them. I was in an electrical closet where I had them stored. This closet is where our DVR's for the camera system were set up, and on the shelf with the DVR's, you've got a pull-out shelf with a monitor and a keyboard. And that's what I caught the corner of. As I was picking the box up, I caught the corner of the shelf with the center of my back. I twisted and it just scraped all across, from the center to the left side of my back. It was probably about four, five, maybe 6 inches. And I went to my knees after that. I stayed that way for probably about a half-hour or so. It was just a lot of pain. I went straight after that to the HR office. And from there, I

---

[8] *See also Sweeney v. King's Daughters Med. Ctr.*, 260 S.W.3d 829, 832 (Ky. 2008).

[9] *Lexington Cartage Co. v. Williams*, 407 S.W.2d 395, 396 (Ky. App. 1966).

14

went to our medical department where I was examined by one of our nurses.

Combs further testified that since his work accident he has suffered radiating left leg pain, low back pain, neck pain, shoulder pain, numbness in his ring and pinky fingers, and muscle spasms. He further testified that he developed pain in his upper shoulders radiating down his left arm, and numbness from his neck to the fingers of his left hand in the days after the accident.

Dr. Jeffrey Uzzle conducted an independent medical examination (IME) on Combs in April of 2014. Pertinent to our review, Dr. Uzzle concluded that the workplace accident caused Combs' C5-C6 disc herniation. "The C5-C6 spinal motion segment (located in the lower cervical spine just above the C7 vertebra) provides flexibility and support to much of the neck and the head above. Due to its high load-bearing function, the C5-C6 motion segment is frequently affected by poor posture, degeneration, disc herniation, radicular pain, and trauma."[10] He also diagnosed Combs with a lumbar sprain or strain with an aggravation of left lower extremity radiculopathy relative to the pre-existing lumbar injury and surgery.

Combs' description of the workplace accident, in conjunction with Dr. Uzzle's conclusions following the IME, adequately supported the ALJ's finding of causation between the workplace accident and the injury to Combs' neck. Dr. Uzzle was entitled to base his opinion as to causation on the history

---

[10] https://www.spine-health.com/conditions/spine-anatomy/all-about-c5-c6-spinal-motion-segment (June 2019).

15

provided by the patient, and to give an opinion about causation based upon that history. Here, Combs testified his neck and shoulder symptoms developed shortly after the work incident, which both Dr. Uzzle and the ALJ found credible. The ALJ, as the sole determiner of the "quality, character and substance of the evidence,"[11] was entitled to rely upon Dr. Uzzle's medical opinion concerning causation in finding that Combs' workplace accident resulted in his cervical spine injury.

Further, the Board and the Court of Appeals erred by requiring the ALJ to further explain the evidentiary basis for its finding that Combs did not have a pre-existing condition.

"[A] pre-existing condition that is both asymptomatic and produces no impairment prior to the work-related injury constitutes a pre-existing dormant condition."[12] The work-related arousal of a pre-existing dormant condition into disabling reality is compensable. *Id.* However, a pre-existing active condition is not compensable. *Id.* To be active, an underlying pre-existing condition must be symptomatic and impairment ratable under the AMA Guidelines immediately prior to the work-related injury. *Id.* Further, when a work-related event aggravates or exacerbates a pre-existing condition, a worker "sustains a new and separate 'injury' within the meaning of KRS 342.0011(1)[.]"[13]

---

[11] *Am. Greetings Corp.*, 331 S.W.3d at 602.

[12] *Finley v. DBM Techs.*, 217 S.W.3d 261, 265 (Ky. App. 2007).

[13] *Ford Motor Co. v. Curtsinger*, 511 S.W.3d 922, 927 (Ky. App. 2017).

16

Dr. Best indicated in his medical report that Combs "did not have an *active* impairment prior to this injury." He further noted in his report that Combs' treating neurosurgeon allowed Combs to return to full and unrestricted work duties prior to the work incident. This was sufficient evidence to sustain the ALJ's finding that Combs did not have a preexisting injury. And while Combs testified that his back was often stiff and he was taking prescription medication to regulate his pain just prior to the workplace injury, it is within the ALJ's discretion to rely on parts of a witnesses testimony and disregard other parts.[14] As such, I am persuaded that the ALJ acted within his discretion in determining Combs did not have a preexisting injury at the time he incurred his workplace injury.

Based on the foregoing, I would reverse the Court of Appeals and reinstate the ALJ's order.

Keller and Wright, JJ., join.

---

[14] *Maloney's*, 560 S.W.2d at 16.