Edward S. FITZPATRICK, Appellant,

v.

CRESTFIELD FARM, INC., Workmen's Compensation Board and James R. Yocom, Commissioner of Labor and Custodian of the Special Fund, Appellees.

Court of Appeals of Kentucky.

July 14, 1978.

William G. Cox, Cox & Cox, Lexington, for appellant.

W. R. Patterson, Jr., Landrum, Patterson & Dickey, Robert S. Walker, III, Brown, Sledd & McCann, Lexington, for appellee, Crestfield Farm, Inc.

Kenneth E. Hollis, Gen. Counsel, Dept. of Labor, Frankfort, John Riehl, Jr., Asst. Counsel, Dept. of Labor, Louisville, for appellee, Special Fund.

William L. Huffman, Director, Workmen's Compensation Bd., Frankfort, for appellee, Kentucky Workmen's Compensation Board.

Before LESTER, VANCE and WILHOIT, JJ.

LESTER, Judge.

Appellant takes issue with a decision of the circuit court which reversed an award of the Workmen's Compensation Board.

■■ In order to dispose of this appeal in an expeditious manner, we will briefly comment that appellant's third issue presented to us, namely, that the agriculture exclusion contained in the Workmen's Compensation Act is violative of the equal protection clauses of the state and federal constitutions because of discriminatory classification of workers, is without merit. Furthermore, as was the situation in *Peck v. Condor*, Ky., 540 S.W.2d 10 (1976), we will not express an opinion with respect to the possible invalidity of a statute when such an issue was not presented on appeal to the circuit court from the board.

■ The main thrust of this appeal is whether the operator of a farm who boarded thoroughbred race horses was excluded from the operation of the Workmen's Compensation Act in view of the definition of agriculture as provided in KRS 342.620(16). After a detailed review of the records of the board, the circuit court and the briefs before this court, we have concluded that the learned trial judge reached the correct conclusions in his well written and reasoned opinion and in affirming that judgment, we adopt his determinations as those of this court. The opinion of the Fayette Circuit Court follows.

This is an appeal from a decision of the Workmen's Compensation Board holding that the Petitioner, Crestfield Farm, Inc., was an employer, mandatorily subject to and required to comply with the provisions of the Kentucky Workmen's Compensation law. The Board also awarded compensation to the Petitioner's employee, Edward S. Fitzpatrick, and dismissed the Special Fund from any liability by way of apportionment. However, since it is the opinion of this Court that the Workmen's Compensation Board was in error in holding Petitioner subject to the Workmen's Compensation Act, the other issues raised by this appeal need not be considered.

The findings of fact and conclusions of law of the Board typically may be found contained in one short paragraph as follows:

"We hold that the defendant, Crestfield Farm, Inc., was not engaged *principally* in agriculture. The financial report filed indicates the farm involved was operated principally for the boarding of horses. Therefore, this defendant was subject to the mandatory provisions of the Act."

KRS 342.630(1), for our purposes, sets out the employers mandatorily subject to the Act as follows:

(1) Any person, other than one engaged solely in agriculture, that has in this state one or more employees subject to this chapter.

It should be noted that in order to qualify for the so called agricultural exemption, a person must be engaged solely in agriculture and not merely engaged *principally* in agriculture. The Board probably was confused by language used in KRS 342.610(2) which doesn't have anything to do with this case.

The evidence before the Board clearly and unequivocally established that the petitioner operated farm premises consisting of one hundred and twenty acres of land containing one horse barn, one barn used for both tobacco and horses, and one four stall shed used for horses and to store machinery. On this farm is raised tobacco, hay, cattle, and thoroughbred yearlings. Also, thoroughbred brood mares owned by other people are fed, housed and cared for on the farm. The financial report referred to by the Board shows the gross receipts from the operation of the farm over a three year period, 1972, 1973, and 1974. The report shows a breakdown of receipts from boarding brood mares, the sale of yearlings, the sale of cattle, the sale of tobacco, and other income. The report indicated that over the three year period mentioned an average of approximately 73% of gross receipts came from boarding brood mares owned by others. Evidently, the Board came to the conclusion that feeding, housing and caring for brood mares on farm premises was not en-

compassed within the definition of agriculture. So far as we are able to determine from the authorities presented by the attorneys for the parties and from our own research, the Board in this case is the only Workmen's Compensation Board in the United States to have come up with such a startling conclusion. No authority for, nor any rational basis for such a conclusion is offered by the Board, nor by any of the attorneys for the parties and this Court can find none.

Many courts throughout the United States, including the Court of Appeals of Kentucky, have had occasion to define the meaning of "agriculture", "agricultural pursuits", "engaged in agriculture", and the like when faced with situations involving Workmen's Compensation Laws, tax laws, zoning laws, and other statutes using such terminology. Although some definitions have been more restrictive than others, we have not found where any Court has held that the usual practice of animal husbandry is not included within the general term "agriculture". According to Webster's Dictionary "animal husbandry" is a branch of agriculture concerned with the production and care of domestic animals.

KRS 342.620 undertakes to define agriculture as follows:

(16) "Agriculture" means the operation of farm premises, including the planting, cultivation, producing, growing, harvesting, and preparation for market of agricultural or horticultural commodities thereon, the raising of livestock for food products and for racing purposes, and poultry thereon, and any work performed as an incident to or in conjunction with such farm operations. It shall not include the commercial processing, packing, drying, storing, or canning of such commodities for market, or making cheese or butter or other dairy products for market."

Although the reasoning of the Board is not disclosed in its opinion, it would appear that the Board must have taken the position that since boarding of brood mares was not specifically mentioned within the legislative definition of "agriculture", it should be excluded. If this was the theory of the Board, we believe it to be incorrect. The legislative definition of agriculture is stated in general terms as meaning "the operation of farm premises" and the following enumeration of more specific types of activity to be included within the general term does not have the effect of excluding all that is not mentioned. Particularly is this true when in the same definition the legislature went on specifically to enumerate those activities which were *not* to be included within the general term. Therefore, the question to be decided by the Court is whether or not feeding, housing, and caring for brood mares is an activity ordinarily and customarily conducted on farm premises and an activity generally recognized as an agricultural pursuit.

It would seem remarkably clear that animal husbandry is an agricultural pursuit and that feeding, housing, and caring for horses is an activity customarily conducted on farm premises and an activity generally recognized as an agricultural pursuit. This being the case, perhaps the Board considered that if the owner and operator of farm premises fed, housed, and cared for horses belonging to someone else for a fee, that this circumstance would change the activity from operation of farm premises to the operation of a "hortel" giving the operation a commercial rather than agricultural connotation. We recognize that in the case of *Bob White Packing Company v. Hardy*, Ky., 340 S.W.2d 245, (1960), the Court of Appeals decided that it was not just the nature of the work which the employee was doing at the time of the injury that determined coverage, but that the whole character of the employment should be considered in determining whether a person was employed in agriculture. In that case the employer operated a slaughter house and meat packing company and incidental to that business operated a farm for the keeping and feeding of cattle until slaughtering time.

We have also considered the case of *Barres v. Waterson [Watterson] Hotel Com-*

*pany,* 196 Ky. 100, 244 S.W. 308 (1922), where the Court in the domestic servant exemption, found that a maid working at a large hotel was not engaged in domestic employment, but industrial employment, even though the actual tasks which she performed were similar to those performed by a domestic servant in a private home.

We think the distinction between those cases and the case at bar is that the packing house business and the hotel business are both well recognized as being commercial and industrial enterprises even though both to some extent utilize agricultural products. However, the "hortel" has not been generally recognized as being a separate and distinct commercial enterprise. While some people may make reference to the race horse "industry", the definition of agriculture set out in the statute specifically includes the raising of livestock for racing purposes. The "raising" of race horses obviously includes feeding, housing, and caring for brood mares. It would be an illogical and impermissibly narrow distinction to say that *raising* race horses is agriculture, but that once they are "raised", (presumably from foal to racing age) their feeding, housing, and care rendered on farm premises becomes a commercial operation.

Neither can this Court find any logical basis for making a distinction based on the ownership of the horses involved. The activity of feeding, housing, and caring for the horses is exactly the same whether the horse is owned by the operator of the farm premises or someone else. The normal routine of farm operation is not changed simply because the farm operator cares for brood mares owned by others in addition to caring for his own brood mares.

Counsel for respondent argues that a "liberal" construction of the statute would authorize the holding of the Board. KRS 342.004 provides that the Act be liberally construed on questions of law, as distinguished from evidence. This requirement is not peculiar to the Workmen Compensation Statute. KRS 446.080(1) requires that all statutes of this state be liberally construed with a view to promote their objects and to carry out the intent of the legislature.

Respondent cites *Dick v. International Harvester Company,* Ky., 310 S.W.2d 514 (1958) which holds that any doubt as to the scope and application of workmen compensation laws must be resolved in favor of the workman or his dependents. However, the problem with this case is that the plain language of the statute leaves no room for doubt. Where the intention of the legislature is so apparent on the face of a statute that there can be no question as to its meaning there is no room for construction, liberal or otherwise. See *Gilbert v. Greene,* 185 Ky. 817, 216 S.W. 105 (1919).

While we must keep in mind the humane and beneficent purpose of workmen compensation laws, we must also keep in mind the duty of the Court to construe the law so as to do justice both to employer and employee. The rule of liberal construction does not mean disregard for statute or its repeal under the guise of construction. *Kentucky Cardinal Coal Corporation v. Delph,* 296 Ky. 295, 176 S.W.2d 886 (1943).

Counsel for respondent stated at the initial hearing before the Board Hearing Officer that it was his intention to persuade the Board to declare race horse farms covered by the Act. We believe this is a matter to be addressed to the legislature and not the Board or the Courts. As a practical matter most of the large race horse farms have come under the Act voluntarily. For the Courts to declare that boarding horses is covered by the Act would impose an unexpected hardship, primarily upon persons operating smaller farms, who have had no legislative notice nor opportunity to obtain insurance coverage. See *Robinson v. Lytle,* 276 Ky. 397, 124 S.W.2d 78 (1938).

It is the opinion of this Court that this case should be remanded back to the Board with Directions to dismiss the case against the Petitioner, Crestfield Farm, Inc.

The judgment is affirmed.

All concur.