### Greg HADDOCK, Appellant,

v.

### HOPKINSVILLE COATING CORPORATION; Thomas Lewis, Arbitrator; Thomas A. Nanney, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2001–SC–0367–WC.

Supreme Court of Kentucky.

Dec. 20, 2001.

---

**14.** Ky.Const. § 115.

Dick Adams, Adams Law Firm, Madisonville, Counsel for Appellant.

Robert A. Winter, Jr., David M. Andrew, Hemmer, Spoor, Pangburn, DeFrank & Kasson, PLLC, Ft. Mitchell, Counsel for Appellee, Hopkinsville Coating.

## OPINION OF THE COURT

The claimant periodically developed sores and blisters on his hands and, for a while, developed a rash over much of his body. Medical evidence established that he suffered from contact dermatitis from exposure to various chemicals in the workplace but that the condition warranted an AMA impairment only at times when it was symptomatic. An Administrative Law Judge (ALJ) determined that the claimant suffered from an occupational disease and was entitled to medical benefits but concluded, nonetheless, that he was not entitled to income benefits because he had missed no work due to his condition and had neither a permanent impairment nor disability. Noting that the claimant retained the ability to perform all of his past work activities so long as he avoided contact with offending chemicals, the ALJ also denied his request for rehabilitation benefits.

Except for remanding the claim to the ALJ to reconsider the claimant's request for rehabilitation benefits under the decision in *Wilson v. SKW Alloys, Inc.,* Ky. App., 893 S.W.2d 800 (1995), the Board affirmed. The Court of Appeals reversed to that extent, relying upon *REO Mechanical v. Barnes,* Ky.App., 691 S.W.2d 224 (1985), for the principle that a finding of permanent disability is prerequisite to an award of rehabilitation benefits. This effectively reinstated the ALJ's decision. Although we have determined that a finding of permanent partial or permanent total disability is not prerequisite to an award of rehabilitation benefits in a post-December 12, 1996, claim, we have also concluded that none of the disputed findings of fact or conclusions of law was erroneous as a matter of law and, therefore, we affirm.

The claimant was born in 1956 and gave a work history that included work as a truck driver while in the military and work as a maintenance man, a general laborer, and a welder before becoming employed by the defendant-employer in 1995. The company paints automobile parts, and the claimant worked on the production line and in maintenance. In July or August of 1995, he first developed blisters and sores on his hands after working for several hours with chemicals while cleaning paint from machinery. Dr. Spencer diagnosed a contact dermatitis which he treated with various steroid medications. After subsequent bouts of such symptoms and additional steroid therapy, he referred the claimant to Dr. Kurita, a dermatologist.

In August, 1996, the claimant complained to Dr. Kurita of a rash over his entire body that had waxed and waned for approximately six months, and he gave a history of sensitivity to isocyanate products while working for a previous employer. Patch testing was performed by Dr. Zanolli, revealing an allergic reaction to thimerosol (merthiolate) and to epoxy res-

ins, chemicals that are commonly found in glue, plastic, and paint. He reported that epoxy resins are present in numerous industrial environments and that even a slight exposure is sufficient to cause an allergic reaction in a sensitive individual. Both Drs. Zanolli and Kurita recommended that the claimant avoid exposure to the offending chemicals. The claimant testified, however, the substances were present in vapor form and were unavoidable; therefore, because he continued to work, he continued to experience periodic flare-ups of symptoms until he was terminated by the employer in October, 1998.

In a report dated December 31, 1998, Dr. Kurita noted that he had reviewed the claimant's medical record and also noted that in November, 1998, the claimant stated that his condition had reoccurred while he was off work but exposed to gasoline and petroleum products while working on motor vehicles. Dr. Kurita assigned a 15% AMA impairment. When deposed, he explained that once an individual is allergic to a substance, the sensitivity is permanent, and he will experience symptoms whenever he is exposed to the substance. The symptoms will subside when the exposure ceases and will flare up again upon re-exposure. He testified that epoxy resins were present in the claimant's workplace but were also present in the everyday environment. When questioned about the manner in which he had assigned an AMA impairment and confronted with an example from the AMA's Guidelines, he testified that the skin condition was rated when it was in its symptomatic state and conceded that no impairment rating was warranted when it was asymptomatic. When he last saw the claimant in January, 1999, the condition was not active.

At the July, 1999, hearing, the claimant testified that his attempts to find other employment had been unsuccessful and that he was presently enrolled in a vocational program, taking courses in electricity. He testified that he tried to avoid any exposure to epoxy resins and that it was difficult to use his hands due to the swelling, pain, itching, and open sores that such exposure produced. He indicated that the blisters that were presently on his hands were worse than they had been a month earlier but that his hands were much better than they had been while he was working.

After reviewing the lay and medical evidence, the ALJ determined that the claimant had sustained a contact dermatitis and that the condition was at least partially related to his exposure to chemicals at work. Rejecting the employer's argument that the claimant's problems were entirely due to an incident in which he was exposed to chemicals while cleaning paint from some machinery, the ALJ determined that the dermatitis was an occupational disease that resulted from his exposure over time and that the claim was timely filed. Nonetheless, relying upon Dr. Kurita's deposition testimony and the example from the AMA Guidelines, the ALJ determined that the condition caused no AMA impairment and, therefore, that the claimant was not entitled to income benefits for permanent disability. Likewise, noting that the condition had never prevented the claimant from working, the ALJ determined that benefits for temporary total disability were inappropriate. Noting that the claimant retained the physical capacity to perform all of his past work if he were not exposed to the offending chemicals, the ALJ also determined that he was not entitled to rehabilitation benefits.

Appealing the Court of Appeals' reinstatement of the decision, the claimant asserts that he is permanently sensitized to epoxy resin, that he continues to suffer from chronic dermatitis, that he has a 15%

impairment, and that he is entitled to both rehabilitation and temporary and permanent income benefits. In contrast, the employer maintains that the evidence of permanent impairment and of temporary total or permanent partial disability was not so overwhelming as to compel a finding in the claimant's favor. It also maintains that because the claimant did not sustain a permanent impairment, the ALJ and the Court of Appeals correctly determined that he is not entitled to an award of rehabilitation benefits.

Since December 12, 1996, KRS 342.0011(11) has required evidence of an AMA impairment to support a finding of permanent, partial disability. Refusing to accept the finding that he has no AMA impairment, the claimant continues to assert that his impairment is 15% and that he is entitled to income benefits for partial disability. The fact remains, however, that although Dr. Kurita assigned a 15% impairment at a time when the claimant's dermatitis remained active, he later testified that when he saw the claimant in January, 1998, approximately three months after the employment had ended, the condition was no longer active and did not warrant an AMA impairment. The claimant received no additional work-related exposure to epoxy resins thereafter, and there was no medical evidence that the work-related injury would result in a spontaneous flare-up of symptoms. Under those circumstances, we are not persuaded that a finding of an AMA impairment or of a permanent partial disability was compelled as a matter of law. Likewise, in view of the fact that the claimant continued to work when he was symptomatic, we are not persuaded that a finding of temporary, total disability was compelled as a matter of law.

KRS 342.710(1) makes it clear that one of the primary purposes of Chapter 342 is the physical and vocational rehabilitation of injured workers so that they can return to gainful employment. To that end, KRS 342.710(3) provides in pertinent part, as follows:

When as a result of an injury [a worker] is unable to perform work for which he has previous training or experience, he shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him to suitable employment.

Restoring a worker to "suitable employment" means attempting to achieve a reasonable relationship between the worker's pre- and post-injury earning capacity. *Wilson v. SKW Alloys, Inc., supra.*

Rehabilitation benefits may be awarded to partially as well as to totally disabled workers. Furthermore, a factual finding concerning whether a worker is unable to perform work for which he has previous training or experience is mandatory whenever a worker seeks to obtain rehabilitation benefits. *Edwards v. Bluegrass Containers Division of Dura Containers Inc.*, Ky.App., 594 S.W.2d 900, 902 (1980). In *REO Mechanical v. Barnes, supra,* the court upheld a finding that a worker who sustained a period of temporary total disability but did not retain any permanent disability was not entitled to an award of rehabilitation benefits. At that time, the term "disability" referred to occupational disability as determined under the standard that was set forth in *Osborne v. Johnson,* Ky., 432 S.W.2d 800 (1968), and did not require evidence of an AMA impairment. Under that standard, a worker who sustained a work-related allergic reaction and sought to prove a resulting occupational disability was required to demonstrate an impairment of his capacity to perform work that did not involve an injurious exposure. *Princess Manufacturing Co. v. Jarrell,* Ky., 465 S.W.2d 45, 49 (1971).

Effective December 12, 1996, the legislature changed the standard for a finding of permanent disability to require evidence of an AMA impairment; however, it did not change the standard for awarding rehabilitation benefits. Thus, we are not persuaded that KRS 342.710(3) requires a finding of permanent disability as a prerequisite to a post-December 12, 1996, award of rehabilitation benefits. It requires only a finding that the affected worker "is unable to perform work for which he has previous training or experience."

In the instant case, the ALJ determined that the claimant was physically capable of performing the same types of work that he could perform before being exposed to epoxy resins so long as he avoided exposure to them, noting that the claimant "readily admitted" as much. It was that finding, not the lack of a finding of disability under the 1996 standard, that formed the basis of the ALJ's decision to deny rehabilitation benefits. Although the claimant testified that he was unable to find other employment, there was no evidence that his inability to do so was attributable to his work-related injury. Thus, although retraining would be expected to enhance his occupational opportunities, we are not persuaded that the evidence compelled a finding that he required additional training in order to obtain employment that bore a reasonable relationship to his pre-injury employment. Under those circumstances, we are not persuaded that an award of rehabilitation benefits was compelled as a matter of law.

The decision of the Court of Appeals is affirmed.

All concur.