### HOMESTEAD FAMILY FARM, Appellant

v.

### David PERRY; Uninsured Employers' Fund; Jonathan R. Wetherby, Administrative Law Judge; and Workers' Compensation Board, Appellees

### NO. 2015–CA–001988–WC

Court of Appeals of Kentucky.

NOVEMBER 23, 2016; 10:00 A.M.

─────────

BRIEF FOR APPELLANT: Jackson W. Watts, Versailles, Kentucky

BRIEF FOR APPELLEE David Perry: Peter J. Naake, Louisville, Kentucky

BRIEF FOR APPELLEE Uninsured Employers' Fund: Paul D. Adams, Frankfort, Kentucky

AMICUS CURIAE BRIEF ON BEHALF OF Kentucky Department of Agriculture: Clint R. Quarles, Frankfort, Kentucky

BEFORE: KRAMER, CHIEF JUDGE; DIXON AND TAYLOR, JUDGES.

## OPINION

DIXON, JUDGE:

Homestead Family Farm seeks review of a decision of the Workers' Compensation Board that reversed the ALJ's dismissal of David Perry's claim for benefits. The sole issue presented concerns whether the agriculture exemption applies to Perry's claim.

Pursuant to KRS 342.630(1), an employer "engaged solely in agriculture" does not have to comply with the provisions of the Workers' Compensation Act. Similarly, KRS 342.650(5) provides that a "person employed in agriculture" is not covered by the Act. The term "agriculture"

> means the operation of farm premises, including the planting, cultivation, producing, growing, harvesting, and preparation for market of agricultural or horticultural commodities thereon, the raising of livestock for food products and for racing purposes, and poultry

thereon, and any work performed as an incident to or in conjunction with the farm operations, including the sale of produce at on-site markets and the processing of produce for sale at on-site markets. It shall not include the commercial processing, packing, drying, storing, or canning of such commodities for market, or making cheese or butter or other dairy products for market;

KRS 342.0011(18).

Homestead's farming business includes 25,000 acres of corn, soybeans, and winter wheat that are harvested and eventually sold to grain elevators or distilleries. Perry was employed by Homestead as a truck driver and operations laborer for approximately two weeks when he injured his back on December 28, 2013. That day, Perry picked up a load of soybeans at one of Homestead's farms in Boyle County and hauled them to Homestead's grain bins in Springfield. While using an auger to move the soybeans from the truck to the grain bin, Perry fell backward and injured his back. Perry filed a claim for workers' compensation benefits, which was bifurcated to address the applicability of the agriculture exemption. Perry's deposition testimony indicated he believed his job was primarily to transport grain and soybeans, but also included performing other tasks during the farm's slow times. Ashley Reding, a general partner with Homestead, also testified by deposition. According to Reding, the sale of crops was Homestead's sole source of income. She indicated Perry's other job duties included cleaning out grain bins, building repairs, and possibly running a tractor or sprayer. Reding also explained the harvested crops were typically taken to one of Homestead's storage bins because the crops had to be dried and dehumidified (to prevent mold) before the crops could go to market.

The ALJ concluded both Homestead and Perry were engaged in agricultural work pursuant to KRS 342.630(1) and KRS 342.650(5) and dismissed Perry's claim pursuant to the agriculture exemption. Perry filed a petition for reconsideration, asking the ALJ to make additional findings regarding whether his activities as a truck driver engaged in drying and storing grain were excluded from the statutory definition of agriculture. The ALJ made the following additional findings on reconsideration:

1. The Defendant provided testimony from Ashley Reding, who stated that the Defendant's activities consist exclusively of growing corn, soybeans, and winter wheat for sale either to grain elevators or distilleries. She further testified that the farm has no other income other than from the sale of grain and the Plaintiff was injured while hauling grain that was grown on the farm to a bin at one of the other properties that is owned or leased by the Defendant.

2. The Plaintiff testified that he was in the process of pulling a grain auger, which shoots grain out of the truck and into a grain bin. He stated that he had taken the grain from one property owned by the Defendant to another that was either leased or owned by the Defendant.

3. The ALJ finds that the activities of the Plaintiff fall squarely within the plain meaning of the definition of Agriculture found in KRS 342.0011(18) as follows in relevant part:

the operation of farm premises, including the planting, cultivation, producing, growing, harvesting, and preparation for market of agricultural or horticultural commodities thereon, ... and any work performed as an incident to or in conjunction with the farm operations ...

4. The work being performed by the Plaintiff was part of the preparation for market of agricultural commodities or at the very least part of work performed as an incident to or in conjunction with the farm operations. The ALJ therefore declines to disturb the Opinion and Order dated May 26, 2015.

Perry appealed the ALJ's dismissal of his claim to the Board, asserting that, at the time of his injury, he was engaged in the commercial drying and storing of grain, an activity excluded from the definition of agriculture. The Board concluded the ALJ erred by finding Perry was an agricultural employee at the time of his injury. The Board stated, in relevant part:

In this case, the testimony is largely uncontested regarding Homestead's operation, and the activity Perry was engaged in at the time of his injury. To facilitate their farming operation, Homestead transferred grain to bins in various locations where it was dried and stored until delivery to distilleries and elevators. Reding testified the grain bins were a part of the farm's business. The grain was dried in order to prevent mold and mildew. Reding testified all land used by Homestead was either leased or owned by it, including that upon which the bins were located. She confirmed Homestead's income is derived solely from the sale of grain, and it only hauled grain it grew.

Perry was primarily hired to haul grain to the various bins at the Springfield and Howardstown locations, as well as to an elevator located in Jeffersonville, Indiana. His job as a driver included the loading and unloading of the grain with assistance of farming equipment. Perry testified on the day of the accident, he had been at a Homestead farm in Boyle County to load harvested soybeans which he hauled to Springfield to unload into grain bins. He was injured while unloading grain with an auger into one of the bins.

'Agriculture' does not include 'the commercial processing, packing, drying, storing or canning of such commodities for market . . .' KRS 342.0011(18). Perry testified he was injured while unloading soybeans at the Springfield facility for the purposes of drying them prior to sale. There was no evidence presented to dispute this testimony. Based on the plain meaning of the statute, to which we must confine our analysis, we conclude Perry's activities at the time of his injury do not fall within the agricultural exemption as defined by KRS 342.0011(18).

The Board reversed the ALJ, finding the statutory agricultural exemption did not apply to Perry because he was engaged in the commercial drying and storing of agricultural commodities when he was injured. Homestead now seeks review of the Board's decision.

■ When this Court reviews a decision of the Board, we "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky. 1992).

■ Homestead argues the Board misconstrued the statutory definition of agriculture by concluding Perry was engaged in "commercial" drying and storing when he was injured unloading soybeans at Homestead's grain bin. Homestead opines the plain meaning of "commercial" as used in the statute would be a facility that generates revenue by drying and storing crops for customers as a business enterprise. In contrast, Perry contends the Board's interpretation of "commercial" is

correct because he was drying and storing Homestead's grain for future sale, which is a commercial activity.

In the case at bar, the Board relied on the enumerated exclusions from the general definition of agriculture—"the commercial processing, packing, drying, storing, or canning of such commodities for market ... [,]" KRS 342.0011(18), to reach its conclusion that the agriculture exemption did not apply to Perry. After careful review, we are convinced the Board misconstrued the definition of agriculture found in KRS 342.0011(18).

In *Fitzpatrick v. Crestfield Farm, Inc.*, 582 S.W.2d 44, 45 (Ky. App. 1978), the Court addressed the applicability of the agriculture exemption to a farm that raised tobacco, hay, and thoroughbred horses, as well as boarded horses owned by others. The Board determined that boarding horses did not constitute an agricultural activity and found the injured employee was entitled to workers' compensation benefits. *Id.* The Court reversed and concluded the agriculture exemption applied, noting in its analysis that

> it was not just the nature of the work which the employee was doing at the time of the injury that determined coverage, but that the whole character of the employment should be considered in determining whether a person was employed in agriculture.

*Id.* at 46. The Court rejected the Board's reasoning that boarding horses belonging to someone else would change the nature of the work from farming activities to "the operation of a 'hortel' giving the operation a commercial rather than agricultural connotation." *Id.*

We believe the reasoning of *Fitzpatrick* is instructive in the case at bar. The Court's analysis implies the term "commercial" means providing a service to customers for a fee, as in boarding horses

belonging to other people. *See id.* Here, there is absolutely no evidence to support the Board's conclusion that Perry was engaged in a "commercial" drying and storing activity. It was undisputed that Perry was tasked with hauling the harvested crops and unloading them at Homestead's storage silos. Reding's testimony established that Homestead only harvested and stored its own crops, and the farm's sole source of income was from the eventual sale of those crops at market. Perry's activities fit within the statutory definition of agriculture, *i.e.*, the "harvesting, and preparation for market of agricultural ... commodities ... and any work performed as an incident to or in conjunction with the farm operations," KRS 342.0011(18); consequently, Perry was a "person employed in agriculture" and not covered by the Act pursuant to KRS 342.650(5). Because we conclude Perry was employed in agriculture and exempt from coverage, the Board's decision to the contrary was erroneous as a matter of law.

For the reasons stated herein, we reverse the Board's opinion and remand this case to the Board with instructions to reinstate the ALJ's opinion and order dismissing Perry's claim.

ALL CONCUR.