RENDERED: MARCH 24, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0200-WC

KINDRED HEALTHCARE                                                          APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                          NO. 2019-CA-1627
WORKERS' COMPENSATION BOARD
NO. WC-17-99840

CARLYE HARPER;                                                          APPELLEES
HONORABLE DOUGLAS W. GOTT, CHIEF
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD

**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING</u>**

Kindred Healthcare appeals the Court of Appeals' opinion which affirmed

the Workers' Compensation Board's (Board) reversal of a decision by the Chief

Administrative Law Judge (CALJ) denying Carlye Harper's motion to reopen her

workers' compensation claim to seek vocational rehabilitation benefits. For the

following reasons, we affirm.

## I.     Factual and Procedural Background

While working as a certified occupational therapy assistant at the

Kindred Healthcare nursing home facility in Dawson Springs, Kentucky,

Harper suffered a work-related lifting injury to her back and lower extremities

while transferring a patient. She thereafter filed an Application for Resolution of a Claim-Injury and the matter was assigned to an Administrative Law Judge (ALJ).

Following submission of proof, a benefits review conference (BRC) was held at which the parties preserved five contested issues, including: (1) work-relatedness and causation; (2) date of maximum medical improvement (MMI); (3) underpayment of temporary total disability (TTD) income benefits as to duration and rate; (4) benefits payable under KRS[1] 342.730; and (5) physical capacity to return to work performed at the time of her injury. Harper did not specifically identify vocational rehabilitation as a contested issue.

At the hearing, Harper testified she would be interested in obtaining vocational rehabilitation services to qualify for less physically demanding employment. Her brief included a request for evaluation regarding appropriateness of vocational rehabilitation services.

In the Opinion, Order and Award, the ALJ weighed conflicting medical evidence and found Harper's low back and left hip conditions were causally related to her work injury at Kindred Healthcare. The ALJ also determined the date on which Harper reached MMI and, based on the parties' stipulation regarding average weekly wage, found an underpayment of TTD income benefits as to both duration and rate. Further, the ALJ determined Harper had sustained an eight percent whole person impairment based on the AMA

---

[1] Kentucky Revised Statutes.

2

Guides.[2]  Because the ALJ found Harper did not retain the capacity to return to work performed at the time of the injury, the award of permanent partial disability (PPD) income benefits was enhanced by application of the triple multiplier mandated in KRS 342.730(1)(c).  However, though KRS 342.710(3) similarly mandates consideration of vocational rehabilitation services "[w]hen as a result of the injury [a worker] is unable to perform work for which he or she has previous training or experience," the ALJ instead held, "[t]he issue of vocational rehabilitation is not before the ALJ at this time, as it was not preserved as a contested issue at the BRC or Hearing."  After Kindred Healthcare's petition for reconsideration was overruled, neither party appealed and the award became final.

Thereafter, Harper attempted to find other suitable employment.  In the coming months, however, she was able to find only short-term, menial work as a part-time sales associate at a clothing store and an as-needed social media advertiser at a boutique.  For the most part, she remained unemployed. Ultimately, she obtained an independent evaluation through the Kentucky Office of Vocational Rehabilitation which agreed she was incapable of performing her previous work but determined she would, in fact, benefit from vocational rehabilitation services.

Based on the foregoing, approximately sixteen months after entry of the ALJ's Opinion, Order, and Award, Harper sought to file an application for

---

[2] American Medical Association, *Guides to the Evaluation of Permanent Impairment* (5th ed.).

3

vocational rehabilitation services under KRS 342.710, including acceleration of her income benefits during the two years required for undergoing college retraining to become a social worker. Because no official template existed specifically relating to vocational rehabilitation services, she utilized a form designed for filing motions to reopen pursuant to KRS 342.125. However, she did not check off which of the form's four grounds for reopening might apply, explaining "[t]his is an application for vocational rehabilitation benefits" and "not a motion to reopen as provided in KRS 342.125." Harper attached a separate Motion for Vocational Rehabilitation emphasizing it was being brought pursuant to KRS 342.710, along with her Affidavit setting forth her post-award inability to return to suitable work and referencing the independent vocational evaluation obtained from the Kentucky Office of Vocational Rehabilitation. She also attached a copy of the extensive vocational evaluation, itself, which confirmed Harper was a good candidate for such training.

The CALJ overruled Harper's motion to reopen "because an attempt to obtain vocational rehabilitation benefits is not a cause to reopen under KRS 342.125(1), and because she waived a claim to those benefits in the original litigation" due to not having preserved the matter as a contested issue at the BRC. In overruling Harper's petition for reconsideration, the CALJ rejected Harper's effort to distinguish the mere request for a vocational evaluation contained in her original brief and her claim for vocational rehabilitation services under KRS 342.710 raised in her motion to reopen. The CALJ again held Harper was precluded from pursuing vocational rehabilitation services

4

due to having failed to preserve the issue and seek such an award "in the original litigation" or to demonstrate entitlement upon reopening "under one of the grounds permitted by KRS 342.125."

Harper appealed to the Board asserting the CALJ's holdings were contrary to the language of KRS 342.710 mandating consideration of vocational rehabilitation services whenever an injured worker is found incapable of returning to work for which he or she has previous training or experience. She argued her post-award claim for vocational rehabilitation services under KRS 342.710(3) represents a ground for reopening independent of those listed under KRS 342.125(1) and one which can be raised at any time, whether during the original action or upon reopening. In addition, she asserted her reopening for such services was not barred by claim preclusion because its merits were not addressed in the original proceedings.

In reversing the CALJ's decision, the Board acknowledged "there is little or no authority construing KRS 342.710 in conjunction with KRS 342.125." However, the Board held the language of "KRS 342.710 contemplates . . . grounds for reopening other than those set forth within KRS 342.125(1)."

On appeal, the Court of Appeals recognized "vocational rehabilitation benefits provided in KRS 342.710 do not fall neatly within the category of contested issues advanced in a claim" and "procedures established by the Department of Workers' Claims envision an informal disposition of vocational rehabilitation benefits, requiring intervention by an ALJ only where the parties disagree." More specifically, the Court of Appeals recognized KRS 342.710

5

mandates whenever an injured worker is found incapable of performing previous employment an ALJ must "inquire whether such services have been voluntarily offered and accepted" and authorizes the ALJ to order a vocational evaluation "on his or her own motion, or upon application of any party or carrier" and to adjudicate disputes relating to such services. The Court proceeded to affirm the Board's decision, holding it "advances the statutory goal of restoring injured workers to gainful employment," and agreed "Harper's failure to appeal the ALJ's refusal to consider her request for a vocational evaluation did not preclude her from seeking vocational rehabilitation services post-award." This appeal followed.

Before this Court, Kindred Healthcare argues the Court of Appeals erred in affirming the Board's reversal of the CALJ's denial of Harper's application for vocational rehabilitation services. First, it argues the Court of Appeals erred in recognizing workers' compensation claimants have an independent post-award statutory right to seek vocational rehabilitation services by means of a motion to reopen under KRS 342.710(3) absent one of the four bases enumerated in KRS 342.125(1). Second, it argues the Court of Appeals erred in affirming the Board's reversal of the CALJ's holding that Harper's claim for vocational rehabilitation services was precluded due to her having failed to preserve the matter as a contested issue during the original action and in not timely appealing the ALJ's original denial of such benefits. Finally, it argues the Court of Appeals erred in permitting Harper's appeal to proceed though she failed to properly serve it with the motion to reopen.

6

## II.    Standard of Review

Workers' compensation is a creature of statute. *Campbell v. Universal Mines*, 963 S.W.2d 623, 624 (Ky. 1998). Statutory construction is a matter of law which requires de novo review by this Court. *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp*, 238 S.W.3d 644, 647 (Ky. 2007). When reviewing a workers' compensation decision, our well-established standard is to "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* at 688.

## III.    Statutory Construction

In resolving the issues raised in this appeal, we must construe the legislative intent relating to two competing workers' compensation statutes, KRS 342.710 and KRS 342.125, as they relate to motions to reopen. "Reopening is the remedy for addressing certain changes that occur or situations that come to light after benefits are awarded." *Dingo Coal Co. v. Tolliver*, 129 S.W.3d 367, 370 (Ky. 2004). When statutorily authorized, "a motion to reopen is the procedural device for invoking the jurisdiction of the Department of Workers' Claims to reopen a final award." *Id.*

"The primary purpose of the Workers' Compensation Act is to aid injured or deceased workers" and statutes are to be interpreted "in a manner that is consistent with their beneficent purpose." *Ky. Uninsured Employers' Fund v. Hoskins*, 449 S.W.3d 753, 762 (Ky. 2014) (citations omitted). The overarching purpose of the workers' compensation chapter "is to compensate workers who are injured in the course of their employment for necessary medical treatment and for a loss of wage-earning capacity, without regard to fault," thereby enabling them "to meet their essential economic needs and those of their dependents." *Adkins v. R & S Body Co.*, 58 S.W.3d 428, 430-31 (Ky. 2001) (citations omitted). Inextricably intertwined with provision of necessary medical treatment and compensation for lost income, a coequal "purpose of workers' compensation legislation is to restore the injured worker as soon as possible and as near as possible to a condition of self-support as an able-bodied worker," and "to enable the worker to reenter the job market and become employed again in a position as near as possible in pay and status to the one the claimant has been forced by injury to leave." *Wilson v. SKW Alloys, Inc.*, 893 S.W.2d 800, 802 (Ky. App. 1995) (citations omitted).

Statutory construction requires that we reasonably interpret competing provisions so as to give effect to both while harmonizing the whole. *Falk v. Alliance Coal, LLC*, 461 S.W.3d 760, 764 (Ky. 2015). "[W]here there is both a specific statute and a general statute seemingly applicable to the same subject [the rule] is that the specific statute controls." *Bevin v. Beshear*, 526 S.W.3d 89, 91 n.6 (Ky. 2017) (citations omitted).

"The essence of statutory construction is to determine and effectuate legislative intent" by drawing insight from "the legislative policy and purpose of the statute" and interpreting the entire statute in context without distorting its intended meaning by focusing on a single sentence, clause, or phrase. *Sweasy v. Wal-Mart Stores, Inc.*, 295 S.W.3d 835, 838 (Ky. 2009) (citations omitted). A statute must be read and applied so that "no part of it is meaningless or ineffectual." *Stevenson v. Anthem Cas. Ins. Grp.*, 15 S.W.3d 720, 724 (Ky. 1999).

> First and foremost, this Court must always bear in mind that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" Therefore, when interpreting a statute, our responsibility is to give effect to the intent of the General Assembly. "We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." In addition, we must assume that the General Assembly intends that a statute be read as a whole such that each of its constituent parts have meaning. And, in interpreting a statute, we must assume that the General Assembly did not intend for an interpretation that would lead to an absurd result.

*Wilson v. Commonwealth*, 628 S.W.3d 132, 140 (Ky. 2021) (citations omitted). Where legislative intent is apparent on the face of a statute and there is no question as to its meaning, "there is no room for construction, liberal or otherwise." *Fitzpatrick v. Crestfield Farm, Inc.*, 582 S.W.2d 44, 47 (Ky. App. 1978). The rule of liberal construction does not authorize judicial disregard of clear statutory language under the guise of interpretation and courts retain the duty to construe statutes "so as to do justice to both employer and employee." *Id.*

9

## IV.    KRS 342.710 and KRS 342.125

KRS 342.710 specifically relates to rights, duties, and procedures relating to vocational rehabilitation services.  "KRS 342.710(1) makes it clear that one of the primary purposes of Chapter 342 is the physical and vocational rehabilitation of injured workers so they can return to gainful employment." *Haddock v. Hopkinsville Coating Corp.*, 62 S.W.3d 387, 391 (Ky. 2001). Regarding the latter, KRS 342.710(3) provides:

> When as a result of the injury [the injured worker] is unable to perform work for which he or she has previous training or experience, he or she shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him or her to suitable employment.

Thus, "a factual finding concerning whether a worker is unable to perform work for which he [or she] has previous training or experience is mandatory" and prerequisite to adjudicating appropriateness of vocational rehabilitation services.  *Haddock*, 62 S.W.3d at 391 (citation omitted).

> "Suitable employment" has been defined to mean:
>
> Work which bears a reasonable relationship to an individual's experience and background, taking into consideration the type of work the person was doing at the time of injury, his age and education, his income level and earning capacity, his vocational aptitude, his mental and physical abilities and other relevant factors both at the time of injury and after reaching his post-injury maximum level of medical improvement.

*SKW Alloys, Inc.*, 893 S.W.2d at 802.  By effectuating a return to a pre-injury level of self-reliance, the statute not only achieves the primary legislative purpose of diminishing individual financial hardship but also, logically, reduces significant private sector and governmental expenditures incurred

10

from dependence on income, subsistence, medical, and other social programs, and thereby spurs broader economic prosperity and greater business investment throughout the Commonwealth.

KRS 342.710(3) indicates an injured worker "is entitled to prompt *medical* rehabilitation services . . . to accomplish physical rehabilitation goals which are feasible, practical, and justifiable," but includes no analogous requirement for prompt provision of *vocational* rehabilitation services. (Emphasis added). As the Board correctly reasoned:

> [T]here is no enumerated time frame within which to seek vocational rehabilitation. We concede that, in most cases, entitlement to vocational rehabilitation is raised during the pendency of the [original] claim. However, the statute does not explicitly require the claimant to seek vocational rehabilitation during the pendency of the original claim seeking income and medical benefits. Consequently, vocational rehabilitation may be invoked by a party by seeking a referral from an ALJ for an "evaluation of the practicability of" and "need for" vocational rehabilitation after the claim has been resolved.

The Board further explained:

> One can conceive of situations wherein the injured worker does not perceive vocational rehabilitation is necessary or underestimates the need for vocational rehabilitation during the pendency of the claim. Instead, only after the claim has concluded does the claimant realize that, without some form of vocational rehabilitation, he or she is unable to return to suitable employment. In those cases, the worker is not precluded from seeking rehabilitation to secure suitable employment.

We agree and are convinced the legislature intended no time limitation relative to addressing vocational rehabilitation services under KRS 342.710(3), intended no requirement that such benefits be sought during the pendency of

11

the original claim, and intended no bar to seeking such benefits in a post-award reopening.

KRS 342.710(3)'s silence in establishing any time limitation or particular procedural mechanism for addressing disputes relating to vocational rehabilitation services is a persuasive indicator of legislative intent. *Sweeney v. King's Daughters Med. Ctr.*, 260 S.W.3d 829, 833 (Ky. 2008). Here, based on the statute's primary goal of returning injured workers to suitable employment and because matters relating to the appropriateness of retraining services may not arise or become apparent until the original action has ended, we are persuaded the Board and Court of Appeals correctly concluded the statute's silence indicates the legislature's intent to authorize the raising of such disputes at any time and by any mechanism, whether during an original claim or in a post-award reopening.

Further, whether raised during the pendency of an original claim or in a post-award reopening, KRS 342.710(3) mandates "[i]n all such instances" in which the injured worker has been found unable "to perform work for which he or she has previous training or experience" the ALJ "shall inquire" whether such services "have been voluntarily offered and accepted." This mandate is necessitated because administrative procedures for implementing vocational rehabilitation services under KRS 342.710(3) are informal, encouraging cooperation between the injured worker and the employer and its insurance carrier. *Neighbors v. River City Interiors*, 187 S.W.3d 319, 324-25 (Ky. 2006).

12

The statute and supporting regulations "anticipate the Department representative will present the results of the evaluation and the available options for physical and/or vocational rehabilitation to the parties," that the parties "will cooperate in devising and implementing a reasonable plan for the injured worker's rehabilitation," and that the statute's punitive measures found in KRS 342.710(5) and (6) will encourage cooperation. *Neighbors*, 187 S.W.3d at 324. Adjudication and entry of an appropriate order by an ALJ is necessitated only "where the parties disagree." *Id.*

In the present case, Harper's right to invoke the vocational rehabilitation procedures under KRS 342.710(3) did not accrue or become readily known until the ALJ found she was incapable of returning to work for which she had previous training and experience. And, appropriateness for vocational rehabilitation services was not established until Harper was unsuccessful in returning to suitable employment and she obtained a vocational evaluation indicating retraining would be beneficial. Even then, the informal administrative procedures envisioned by the statute presumed the parties would cooperate in discussing, developing, and implementing a reasonable plan. Post-award reopening for ALJ adjudication became necessary only because a dispute arose between Harper and Kindred Healthcare. Based on the foregoing, the Court of Appeals correctly recognized "vocational rehabilitation benefits provided in KRS 342.710 do not fall neatly within the category of contested issues advanced in a claim." As such, KRS 342.270(1)'s requirement for joinder of all causes of action in an original proceeding is

13

inapplicable to Harper's circumstances and she did not waive her right to seek vocational retraining by failing to pursue such benefits during the pendency of her original claim.

The ALJ's compliance with the procedures mandated in KRS 342.710(3) is not elective or conditioned upon any claim or action by the parties, nor is it required that any request for such services be listed as a contested issue by either party. Upon the necessary finding of inability to perform previous work, the ALJ "shall" make inquiry regarding any voluntary vocational rehabilitation services and may exercise discretion in assessing the merits of awarding vocational rehabilitation services. *Commonwealth, Transp. Cabinet v. Guffey*, 42 S.W.3d 618, 621 (Ky. 2001). To aid assessment, KRS 342.710(3) authorizes the ALJ to "refer the employee to a qualified physician or facility for evaluation of the practicability of, need for, and kind of service, treatment, or training necessary and appropriate to render him or her fit for remunerative occupation." A referral may be initiated on the ALJ's "own motion, or upon application of any party or carrier" and the parties shall be afforded "an opportunity to be heard." KRS 342.710(3). Whenever requested by either party, "[t]he procedure set out in KRS 342.710 must be followed" to allow the ALJ to make the requisite findings relative to the injured worker's level of disability and the merits of vocational rehabilitation services. *Edwards v. Bluegrass Containers Div. of Dura Containers, Inc.*, 594 S.W.2d 900, 902 (Ky. App. 1980). "[I]f the employee 'is unable to perform work for which he has

14

previous training or experience' as a result of a work-related accident, he is entitled to vocational rehabilitation services." *Id.*

Conversely, KRS 342.125 specifically relates to motions to reopen seeking to "end, diminish, or increase compensation previously awarded . . . or change or revoke a previous order" related thereto. KRS 342.125(4). Reopening compensation awards "previously dismissed or denied on the merits" is prohibited absent a showing of one of four grounds, including: (a) fraud, (b) newly discovered evidence, (c) mistake, or (d) change of disability. KRS 342.125(1) and (2). "Compensation" is defined as meaning "all payments made under the provisions of this chapter representing the sum of income benefits and medical and related benefits." KRS 342.0011(14). None of the benefits referenced under the definition of "compensation"—including "income benefits," "medical and related benefits," "medical services," and coal workers' "retraining incentive benefits"—encompass vocational rehabilitation services. *See* KRS 342.0011(12), (13), (14), and (15); KRS 342.732; and KRS 342.125(5).

## V. Independent Ground for Reopening

Based on the foregoing, we are convinced the legislature intended KRS 342.710(3) to provide an independent ground for reopening, especially given the important governmental purposes KRS 342.710 seeks to achieve. Clearly, the provisions of KRS 342.710 pertain specifically to applications and motions to reopen seeking vocational rehabilitation services, while the provisions of KRS 342.125 pertain to motions to reopen seeking to "end, diminish, or increase compensation previously awarded" or to "change or revoke" a related order. To

15

the extent the two statutes differ or conflict, KRS 342.710 is the more specific relative to vocational rehabilitation services and controls. Thus, as the Board held, and the Court of Appeals correctly affirmed, "KRS 342.125(1) is not the sole vehicle by which reopening can be achieved in order to obtain vocational rehabilitation[;]" "a motion to reopen seeking vocational rehabilitation need not be pigeon-holed into one of the grounds set forth in KRS 342.125(1)[;]" and "KRS 342.710 contemplates motions to reopen based on grounds set forth exclusively within [its own statutory provisions]."

As the Board correctly discerned, today's holding was presaged, expressly or implicitly, by two prior decisions of this Court. In *Neighbors*, though a request for vocational retraining was not mentioned in the BRC memorandum or the claimant's brief, an ALJ found the injured worker totally disabled and ordered an evaluation to determine the propriety of vocational retraining. The claimant filed a petition for reconsideration asserting his physical condition precluded retraining. However, the employer argued vocational rehabilitation is a crucial goal of the Workers' Compensation Act and complained the injured worker was avoiding reasonable attempts to return him to suitable employment. The ALJ overruled the claimant's petition. Thereafter, an evaluation was conducted but the claimant refused to cooperate with recommended retraining.

The employer filed a motion to reopen the original award to seek a reduction of PTD income benefits due to the claimant's refusal to cooperate, citing both KRS 342.125(1) and KRS 342.710(5). The claimant objected to

16

reopening, arguing none of the grounds enumerated in KRS 342.125 permitted reopening under the circumstances and KRS 342.710's silence regarding the mechanism for requesting a reduction of income benefits meant the matter must be brought under circuit court jurisdiction. Because the process established by KRS 342.710(3) had not been accomplished, the CALJ ordered the matter reopened and assigned it to another ALJ for further proceedings.

A second vocational evaluation confirmed prior findings and recommendations. The ALJ found the claimant's physical condition did not prevent participation in a retraining program and that his willing participation might reasonably return him to suitable employment. The employer's motion for reduction of PTD income benefits was overruled but the claimant was ordered to undergo vocational rehabilitation services as previously recommended. A second petition for reconsideration was overruled and the claimant appealed. In affirming the ALJ's order upon reopening directing the claimant's acquiescence to recommended vocational retraining, our Court held:

> Post-award disputes concerning vocational rehabilitation under KRS 342.710(3) and requests for a reduction in benefits under KRS 342.710(5) are matters that arise under Chapter 342; therefore, KRS 342.325 grants an ALJ jurisdiction to decide them. A worker seeking to resist rehabilitation has the burden to show that the evaluator's recommendations or the available options are impractical or inappropriate. An employer seeking a reduction in benefits has the burden to show that the worker has refused to accept rehabilitation pursuant to an ALJ order.

*Neighbors*, 187 S.W.3d at 324. Notably, our holding in *Neighbors*—establishing that the four grounds authorizing reopening under KRS 342.125(1) are not exhaustive—was decided in 2006.

17

> [T]he failure of the legislature to change a known judicial interpretation of a statute [is] extremely persuasive evidence of the true legislative intent. There is a strong implication that the legislature agrees with a prior court interpretation of its statute when it does not amend the statute interpreted.

*Toyota Motor Mfg., Ky., Inc. v. Prichard*, 532 S.W.3d 633, 636 (Ky. 2017) (citing *Rye v. Weasel*, 934 S.W.2d 257, 262 (Ky. 1996)).

In *Pinkston v. Teletronics, Inc.*, 4 S.W.3d 130 (Ky. 1999), an injured worker who was awarded PPD benefits requested to pursue a vocational rehabilitation program and the ALJ referred him for evaluation. The injured worker subsequently enrolled in a full-time, lengthy, and distant retraining program. The employer voluntarily paid for program registration fees, books, and tuition, but refused reimbursement for mileage under KRS 342.710 or payment of rehabilitation income benefits pursuant to KRS 342.715. The injured worker filed a motion to reopen.

Ultimately, our Court held medical evidence supported extending the claimant's period of vocational retraining, the claimant was entitled to reimbursement of mileage expenses for commuting to the rehabilitation program, and that enhanced rehabilitation benefits authorized by KRS 342.715 did not apply to the claimant, whose permanent disability was merely partial. Our decision in *Pinkston* referenced none of KRS 342.125(1)'s grounds as having authorized the reopening. Thus, in *Pinkston* we implicitly recognized KRS 342.710(3) as an independent ground by resolving issues raised upon reopening on their merits with no mention of any authority other than the related KRS 342.715.

18

## VI.    No Claim Preclusion

We are further convinced claim preclusion does not bar adjudication of Harper's claim.  Claim preclusion bars a party from relitigating a previously adjudicated cause of action.  *Miller v. Admin. Off. Of Cts.*, 361 S.W.3d 867, 871 (Ky. 2011) (citing *Yeoman v. Commonwealth Health Pol'y Bd.*, 983 S.W.2d 459, 464 (Ky. 1998)).  For claim preclusion to apply, three elements must be met: "(1) an identity of parties between the two actions; (2) an identity of the two causes of action; and (3) the prior action must have been decided on the merits."  *Id.* at 872 (quoting *Harrod v. Irvine*, 283 S.W.3d 246, 250 (Ky. App. 2009)).  "The doctrine of [claim preclusion] applies to the rulings of a Work[ers'] Compensation Board the same as it does to the decisions of a court."  *Hysteam Coal Corp. v. Ingram*, 283 Ky. 411, 415, 141 S.W.2d 570, 572 (1940).

Here, however, because the ALJ erroneously failed to properly investigate and adjudicate the merits of Harper's request for vocational rehabilitation services pursuant to KRS 342.710(3) in the original action after having found her incapable of previous work, the third element necessary for imposition of claim preclusion was not met.  *See Miller*, 361 S.W.3d at 872.  As a result, Harper is not barred from pursuing such services in this statutorily authorized reopening.

We acknowledge that during the original proceedings, vocational rehabilitation services were not specifically listed as a contested issue at the BRC or formal hearing.  However, Harper listed "[a]bility to return to work performed at time of injury" as a contested issue on the BRC memorandum

19

and testified at the hearing, indicating she was "very interested in retraining for a job such as a counselor or therapist, which does not require heavy lifting" and was "anxious to be retrained for a job . . . less physically demanding." Thereafter, Harper's brief requested:

> In addition to the medical and income benefits, we ask the ALJ to order a vocational rehabilitation evaluation for Ms. Harper, with the hope that she can return to being a productive member of the work force.

We are convinced that by listing "[a]bility to return to work performed at time of injury" as a contested issue in the original action, Harper had in essence invoked and preserved a claim for appropriate vocational rehabilitation services under KRS 342.710(3), because an ALJ's finding of such disability automatically triggers the statutory mandate for the ALJ to explore and adjudicate the merits of an award of vocational rehabilitation services. Here, the ALJ made the requisite finding regarding the matter preserved as a contested issue but failed to follow procedures mandated by that finding, and as a result, failed to address the merits of Harper's request. Again, a mandated administrative procedure need not be preserved by a request or listing it as a contested issue. Instead, the ALJ merely held:

> The issue of vocational rehabilitation is not before the ALJ at this time, as it was not preserved as a contested issue at the BRC or Hearing.

Logically, matters "not before" an ALJ are matters remaining to be awarded, denied, or dismissed, and the ALJ's statement that Harper's request would not be considered "at this time" denotes the matter could ripen for adjudication "at

20

another time." Thus, the doctrine of claim preclusion is inapplicable to the present appeal.

### VII.   Sufficient Service

Finally, we agree with the Board and Court of Appeals that there is no merit in Kindred Healthcare's assertion that improper service should bar consideration of Harper's motion to reopen. While Harper failed to serve Kindred Healthcare's counsel with a paper or emailed copy of her motion to reopen, the employer's brief acknowledges Harper's motion indicated service was to be accomplished through the Litigation Management System (LMS), which the Kentucky Labor Cabinet's website describes as:

> a web-based application designed to move the workers'
> compensation litigation system into the 21st century by allowing
> stakeholders to file and manage claims electronically rather than
> the traditional method of filing paper.

Admittedly, because Harper's original claim had been closed on the LMS, counsel for Kindred Healthcare had no access to subsequent filings and remained unaware of Harper's subsequent filing of her motion to reopen until receipt of an acknowledgment letter from the Department of Workers Compensation. However, Harper's service by way of the LMS provided sufficient notice upon Kindred Healthcare as was evidenced by counsel's filing of a response on the very same LMS within seven days of entry of Harper's motion to reopen.

> [T]he object or purpose of a service of process is to notify of the
> proceeding, thereby affording *an opportunity to appear before and
> be heard by the court.* It must be admitted that mere knowledge of
> the pendency of an action is not sufficient to give the court

21

jurisdiction, and, *in the absence of an appearance*, there must be a service of process.

*Rosenberg v. Bricken,* 302 Ky. 124, 194 S.W.2d 60, 62 (1946) (emphasis added). Clearly, Harper's failure to serve Kindred Healthcare's counsel with a paper or email copy of the motion to reopen in no way prejudiced the employer's ability to offer a timely and effective response, and Harper's motion to reopen should not be barred.

## VIII. Conclusion

For the foregoing reasons, we affirm the Court of Appeals' decision upholding the Board's reversal of the CALJ's dismissal of Harper's motion to reopen seeking vocational rehabilitation services pursuant to KRS 342.710.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Catherine Ann Poole
Goodrum & Downs PLLC

COUNSEL FOR APPELLEE,
CARLYE HARPER:

Rodger W. Lofton

CHIEF ADMINISTRATIVE LAW JUDGE:

Hon. Douglas W. Gott

WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey